NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 1, 2012[*]
Decided February 2, 2012

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 11-2829

| | |
|---|---|
| PERRIS D. CANNADAY, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 09-C-811 |
| | |
| RICHARD SANDOVAL, et al., | C.N. Clevert, Jr., |
| *Defendants-Appellees.* | *Chief Judge.* |

**O R D E R**

Milwaukee police officers with an arrest warrant apprehended Perris Cannaday near his home in December 2004 and found six grams of crack cocaine in his pocket. The officers

---

[*]After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. See FED. R. APP. P. 34(a)(2)(C).

entered Cannaday's home to prevent the destruction of evidence, then obtained a search warrant and discovered large amounts of crack and powder cocaine. Wisconsin prosecutors charged Cannaday with possessing with intent to deliver crack, but they dismissed the charge after a state judge granted Cannaday's motion to suppress the drugs found in his residence. Cannaday's respite was brief: he was later charged and convicted in federal court of illegal possession of the drugs. Claiming that the police had violated his Fourth Amendment rights by entering his house without a warrant and then obtaining a warrant without probable cause, Cannaday sued the arresting and searching officers under 42 U.S.C. § 1983. The district court granted the defendants' motion for summary judgment, reasoning that the Wisconsin court's decision to suppress the evidence did not by itself establish a federal constitutional violation, and even if Cannaday's rights were violated, the defendants were entitled to qualified immunity. We affirm.

The parties agree on the relevant facts. During the course of a drug investigation, police officer Richard Sandoval concluded that Cannady was distributing cocaine from his residence. Sandoval then learned that there was an active warrant for Cannaday's arrest and asked other officers, including John Kuspa and officer Bandt, to observe the residence on December 10, 2004. The officers did not see anyone enter or leave Cannaday's residence during the surveillance until they watched Cannaday walk out, enter his car, and drive away. Officers George Schad, Randal Smith, and Sandoval followed him and stopped him about four blocks away, where they arrested him and recovered six grams of crack from his pocket. Cannaday refused Sandoval's request for permission to search his residence. He also refused to tell the officers whether anyone else was inside the house.

Continuing his investigation, Sandoval approached the residence. He thought that there might be people inside who had learned of the arrest and would destroy evidence or contraband. As he stood outside the door, he heard what sounded like voices. Sandoval knocked and identified himself. When no one answered, the tactical team entered but it found no one inside. Sandoval realized that the voices were from a television. The officers did not search, and Sandoval returned to the police station to seek a warrant.

The affidavit Sandoval prepared said that he had "developed information" about Cannaday, but it provided no detail about that information or the investigation. Sandoval also wrote that Cannaday had a prior drug conviction, that he was arrested on a valid warrant, and that he had in his pocket an amount of crack consistent with distribution. Therefore, Sandoval swore, he thought it likely based on past experience that Cannaday would have more cocaine inside his house. A state judge issued the warrant, whereupon the officers at the scene searched the residence and recovered 1.4 kilograms of crack, 55.81 grams of powder cocaine, packaging material, and over $15,000 in currency.

Cannaday was charged in state court with possessing cocaine with intent to deliver. WIS. STAT. § 961.41(1m)(cm). He moved to suppress the evidence recovered from his residence on the ground that the application for the search warrant failed to establish probable cause. The Wisconsin court agreed and granted Cannaday's motion. The court noted that the "officers were acting in good faith, obviously" but suppressed the evidence anyway. State prosecutors voluntarily dismissed the pending charge in May 2006, and as we noted, several months later Cannaday pleaded guilty in federal court to possessing with intent to distribute the crack found in his pocket. See 21 U.S.C. § 841(a)(1), (b)(1)(B) (2000). He was sentenced to 135 months' imprisonment.

Cannaday, now a federal inmate in Michigan, filed this lawsuit against the officers involved in his arrest and the search in August 2009. After discovery the parties filed cross-motions for summary judgment. Cannaday argued that the officers never should have entered his house without a warrant. Moreover, he continued, the state court's ruling on his motion to suppress established that the search warrant the officers obtained after their initial entry was not supported by probable cause. The defendants countered that the Wisconsin decision did not control because the state's interest in prosecuting Cannaday differs from their interest in defending his civil suit. They also argued that they are entitled to qualified immunity because they reasonably believed that exigent circumstances justified the warrantless entry and relied in good faith on the search warrant.

The district court concluded that the Wisconsin court's ruling was not preclusive because the question whether the officers were entitled to qualified immunity was not actually litigated in the state criminal case. In addition, it thought that preclusion was inappropriate because the defendant officers had no opportunity to appeal the state suppression order. The court further concluded that, even if Cannaday's rights had been violated, qualified immunity protected the officers from liability because they obtained a facially valid warrant before searching his house. It added that qualified immunity also shielded the officers from liability for entering Cannaday's house before getting the warrant because Cannaday had failed to establish that no reasonable officer would have believed that probable cause and exigent circumstances existed.

On appeal Cannaday maintains that the district court should not have allowed the police officers to present their defense to civil liability because, in his view, the Wisconsin state court has already ruled in his favor. He also contends that qualified immunity should not apply to either the initial entry or the search of his house. As he sees it, the officers should have known that there was no risk of evidence being destroyed because they had been watching his house and had not seen anyone enter. Second, he argues that no police officer reasonably could have believed that the search warrant was valid.

We agree with the district court that the officers were not precluded from presenting their defense because of the earlier state judgment. Cannaday's motion to suppress was decided by a Wisconsin court, and so that state's law determines the preclusive effect of the decision in federal court. See 28 U.S.C. § 1738; *Allen v. McCurry*, 449 U.S. 90, 95–96 (1980). In Wisconsin, "[o]ffensive collateral estoppel occurs when the plaintiff seeks to foreclose a defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *Michelle T. v. Crozier*, 495 N.W.2d 327, 328 n.1 (Wis. 1993). Offensive collateral estoppel also can be used against a defendant who, although not a party to the earlier litigation, has legal interests aligned with those of a previous party. See *Paige K.B. ex rel. Peterson v. Steven G.B.*, 594 N.W.2d 370, 377–78 (Wis. 1999). Neither situation is present here because the prosecutors in the criminal proceeding had no interest in the potential civil liability of the police officers. See *id.* at 378.

Even if the interests of the state and the police officers were aligned, the officers would not be precluded from raising the defense of qualified immunity because that issue was not actually litigated in the criminal proceeding. See *In re Estate of Rille ex rel. Rille*, 728 N.W.2d 693, 702–03 (Wis. 2007); *Mrozek v. Intra Fin. Corp.*, 699 N.W.2d 54, 61 (Wis. 2005). The Wisconsin court addressed only whether probable cause supported the warrant; it did not discuss the reasonableness of the officers' actions or the legal significance, for the purposes of federal law, of its conclusion that the officers had relied on the warrant in good faith. Thus the Wisconsin court's ruling that the police lacked probable cause for the search warrant does not control the outcome of this lawsuit. Indeed, the officers did not argue at summary judgment that the information disclosed in the application establishes probable cause for the warrant; they argued only that they relied on the warrant in good faith. Nor did they provide further details about the investigation leading to the arrest; thus we neither can nor must determine whether the officers had probable cause.

Even if the police officers lacked probable cause when they applied for the search warrant, this record reveals nothing that would support personal liability. An officer who relies on a warrant later declared invalid will not be liable for damages under § 1983 unless the warrant application was "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Malley v. Briggs*, 475 U.S. 335, 344–45 (1986); see *Junkert v. Massey*, 610 F.3d 364, 369 (7th Cir. 2010). Sandoval explained in his affidavit at summary judgment that he had developed information on Cannaday and knew that Cannaday had been convicted of a prior drug crime, had an outstanding warrant for his arrest, and had just left his house with a sizable amount of crack in his pocket. He believed that he would find more evidence in Cannaday's house, and the state judge who issued the search warrant did too. Nothing in the record suggests that any of the officers had reason to question the warrant at the time of the search. See *Brooks v. City of Aurora, Ill.*, 653 F.3d 478, 483–84 (7th Cir. 2011). The warrant application was not so plainly deficient that it made the absence of

probable cause obvious. *Junkert*, 610 F.3d at 369; *United States v. Dismuke*, 593 F.3d 582, 589 (7th Cir. 2010); *Justice v. Town of Cicero*, 577 F.3d 768, 773 (7th Cir. 2009).

Qualified immunity also protects the officers from liability for entering Cannaday's house without a warrant. If evidence is likely to be destroyed, the police have justification for a warrantless entry to secure the premises. See *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011). Police must have both probable cause and a reasonable belief that exigent circumstances require immediate action. See *Leaf v. Shelnutt*, 400 F.3d 1070, 1081 (7th Cir. 2005). Based on the information in the warrant application, the officers reasonably believed that they had probable cause to search the residence. Sandoval suspected that others may have observed the arrest, which occurred just after Cannaday had turned off his street after driving a few short blocks. Anyone remaining in Cannaday's house could have received instructions to destroy contraband or done so when Cannaday did not return. See *United States v. Fiasche*, 520 F.3d 694, 698 (7th Cir. 2008); *United States v. Marshall*, 157 F.3d 477, 482 (7th Cir. 1998); *United States v. Bennett*, 908 F.2d 189, 192 (7th Cir. 1990). Sandoval thus approached and knocked on the door to continue his investigation and heard what he thought were voices from inside. Cannaday says that the officers knew no one was in his residence because they never saw anyone enter. But neither had the officers seen anyone else leave during their surveillance. It is possible that the house was occupied the entire time. Cannaday's refusal to say whether he had left anyone behind made it more reasonable for the officers to conclude that contraband or evidence might be destroyed if they did not act. In any event, we would not disturb the district court's factual determination that exigent circumstances existed. Thus, Cannaday has not met his ultimate burden of showing that the entry was unauthorized. See *Bogan v. City of Chicago*, 644 F.3d 563, 569 (7th Cir. 2011).

AFFIRMED.