**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 1, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

PAUL ARMIJO,

     Plaintiff–Counter-Defendant–
     Appellee,

     v.

ARMANDO PERALES; MIRABEL
JIMENEZ; ARNOLD CHAVEZ;
ADRIAN FLORES, in their individual
capacities,

     Defendants–Appellants,

D & M SPORTING GOODS,

     Defendant–Counter-Claimant,

and

VILLAGE OF COLUMBUS, NEW
MEXICO; EDDIE ESPINOZA,
TRACY BOLDUC, BLAS
GUTIERREZ, ROBERTO
GUTIERREZ, BRIAN HOULTIN,
ALLEN ROSENBERG, in their
individual capacities; SIXTH
JUDICIAL DISTRICT ATTORNEY'S
OFFICE; ERNIE SERA; BORDER
OPERATIONS TASK FORCE,

     Defendants.

No. 11-2098

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. 1:08-CV-00935-MV-WPL)**

Cody R. Rogers (T.A. Sandenaw, Jr., with him on the briefs) of Sandenaw Law Firm, P.C., Las Cruces, New Mexico, for Appellants.

Michael E. Mozes of Law Offices of Michael E. Mozes, P.C., Albuquerque, New Mexico, for Appellee.

---

Before **TYMKOVICH**, **McKAY,** and **HOLMES**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

This is an appeal from the district court's order denying Appellants qualified immunity in this § 1983 action. Plaintiff Paul Armijo, former police chief of the Village of Columbus in New Mexico, filed a civil suit against several individual and entity defendants, including Appellants Armando Perales, Arnold Chavez, Adrian Flores, and Mirabel Jimenez. The civil suit arose out of an earlier criminal investigation that resulted in Appellants executing search and arrest warrants against Plaintiff.

At the time in question, Appellants were criminal investigators in the district attorney's office with purview over the Village of Columbus. In early 2007, Appellant Chavez assigned Appellants Jimenez and Perales to investigate Plaintiff on allegations of improper evidence handling, inventory problems relating to both police equipment and evidence, and the mishandling of city funds and impounded vehicles. Around the same time period, on January 25, 2007, Plaintiff reported an alleged battery by the Village of Columbus mayor to state

-2-

police.

A conflicting bid sheet and purchase order relating to a city firearm purchase caused Appellants to investigate Plaintiff's role in the transaction. While the original bid sheet ordered six firearms, the purchase order revealed the city had only purchased four firearms, the city's check amounted to the value of four firearms, and the city's inventory contained four firearms. One of the officers Appellants interviewed suggested Plaintiff had purchased the other two firearms for personal use.

Based on their investigation, Appellants sought a search warrant for Plaintiff's home.[1] In his supporting affidavit, Appellant Flores described his general experience with narcotic-related investigations, but the information specific to Plaintiff only detailed the questionable firearm purchase. The affidavit did not include any evidence connecting Plaintiff to other missing inventory, including drugs or money.

The search warrant, however, signed by a New Mexico district court judge, authorized a search for:

> (1) Books, records and information, computerized records, receipts, notes, ledgers and other documents relating to transporting, ordering, purchasing, and/or distributing controlled substances. . . .

> (2) Financial documents, including but not limited to, credit card

---

[1] Appellants also procured a search warrant for Plaintiff's father-in-law's home. That warrant is not at issue in this appeal.

statements, tax returns, safe-deposit records, safe-deposit keys, bank records, bank statements, money orders, Western Union receipts, checking accounts records[,] cashiers checks, passbooks and other items evidencing the obtainment, concealment and/or expenditure of money.

(3) Photographs and/or video tapes including but not limited to photographs and/or video tapes of co-conspirators, weapons, assets and/or controlled substances and/or narcotics.

(4) Firearms. Any and all firearms, which may be currently reported[] stolen or altered in any manner . . . which would constitute a crime. Any and all parts, pieces, barrel ends, or components of any firearms.

(Appellants' App. at 164.) Appellants also submitted an arrest warrant for Plaintiff on charges of two counts of larceny of a firearm or, in the alternative, two counts of embezzlement. The supporting affidavit similarly detailed the facts regarding the missing firearms, including the following statement: "Investigators spoke with Columbus Police Officer Tracy Bolduc about the two missing firearms. Officer Bolduc stated that Chief Armijo had purchased one [of] the firearms for personal use and one to give to his father-in-law." (*Id.* at 279.)

On January 30, 2007, Appellants executed the search warrant on Plaintiff's residence. They found the two allegedly missing firearms in his home. They did not find any evidence relating to drugs, money, or other missing inventory. Appellant Perales then executed the arrest warrant and arrested Plaintiff. The charges were later dismissed with prejudice for lack of prosecution.

In his § 1983 complaint, Plaintiff raised a number of claims against several

defendants, including claims of false arrest, false imprisonment, illegal search and seizure, and retaliation in violation of the First Amendment arising from Plaintiff's report of the mayor's alleged battery. Appellants moved for summary judgment based on qualified immunity. The district court denied summary judgment, holding the search and arrest warrants were invalid and thus Appellants were not entitled to qualified immunity on Plaintiff's false arrest, false imprisonment, and illegal search and seizure claims. Further, the district court held genuine issues of material fact existed as to certain elements of Plaintiff's retaliation claim and therefore denied summary judgment on that claim.[2] This appeal followed.

## DISCUSSION

We review interlocutory legal challenges to the denial of a motion for summary judgment on grounds of qualified immunity de novo. *Thomas v. Durastanti*, 607 F.3d 655, 662 (10th Cir. 2010). However, "[w]e do not have jurisdiction to review the district court's factual findings, including its finding that a genuine issue of fact existed" to preclude summary judgment. *Armijo v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1259 (10th Cir. 1998).

To defeat a claim of qualified immunity, a plaintiff must show (1) the officers violated the plaintiff's constitutional or statutory rights and (2) the

---

[2] The district court made additional summary judgment rulings on Plaintiff's other claims, which are not at issue in this appeal.

violated rights were clearly established at the time of the event. *Mascorro v. Billings*, 656 F.3d 1198, 1204 (10th Cir. 2011). On appeal, we "examine the facts presented on summary judgment in the light most favorable to the plaintiff, to determine whether they amount to a violation of a clearly-established right." *Walker v. City of Orem*, 451 F.3d 1139, 1155 (10th Cir. 2006) (footnote omitted).

We look first at the search warrant Appellants executed on Plaintiff's home. Appellants contend the search was constitutional because they conducted it pursuant to a valid search warrant supported by probable cause.

"We review the district court's ruling on the sufficiency of the warrant de novo, but we pay great deference to the probable cause determination made by the judge who issued the warrant." *Poolaw v. Marcantel*, 565 F.3d 721, 728 (10th Cir. 2009). The Fourth Amendment provides that citizens are free from unreasonable searches and seizures and requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Probable cause is a common-sense standard that requires facts sufficient to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *United States v. Mesa-Rincon*, 911 F.2d 1433, 1439 (10th Cir. 1990) (internal quotation marks omitted). The particularity requirement of the Fourth Amendment "prevents general searches and strictly limits the discretion of the officer executing the warrant." *Cassady v. Goering*,

567 F.3d 628, 635 (10th Cir. 2009). "It is not enough that the warrant makes reference to a particular offense; the warrant must ensure that the search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *Id.* at 636 (brackets omitted). A warrant is overbroad where it "fail[s] to specify a crime to which the sought evidence relates." *United States v. Harris*, 903 F.2d 770, 775 (10th Cir. 1990).

We agree with the district court that the search warrant here violated Plaintiff's Fourth Amendment rights. The supporting affidavit detailed evidence of Plaintiff's alleged larceny of the two firearms. It offered no evidence linking Plaintiff to any missing funds, narcotics, or any other police department property. The warrant, however, authorized a search, without any time limitation, for: (1) books and records relating to controlled substances; (2) financial documents, without any subject matter limitation, showing expenditure of money; (3) photographs and video of co-conspirators, weapons, assets, controlled substances, and narcotics; and (4) any and all firearms reported stolen or altered in any way.[3] These general categories far exceeded the evidence offered in the affidavit. While the evidence may have been particularly described, it "fail[ed] to specify a crime to which the sought evidence relate[d]." *Harris*, 903 F.2d at 775.

_____

[3] Appellants actually seized in the search one of Plaintiff's firearms which was not the subject of the alleged crime, was not currently reported stolen, and was not reported altered in any way.

Appellants argue the affidavit was as specific as circumstances allowed, and Appellants knew they were looking for evidence relating to the broader investigation of anything that could have been stolen from the police department's inventory. But a court cannot rely on evidence not included in the affidavit to establish probable cause. *See Poolaw*, 565 F.3d at 729 n.7; *see also Aguilar v. Texas*, 378 U.S. 108, 109 n.1 (1964) ("It is elementary that in passing on the validity of a warrant, the reviewing court may consider only information brought to the magistrate's attention."). There is no indication in the record the authorizing judge knew anything more than what was set forth in the warrant affidavits. Even assuming the allegations regarding the two firearms were sufficient to establish probable cause to believe the firearms were improperly obtained, the warrant was constitutionally invalid because "the scope of the warrant far exceeded the probable cause to support it." *United States v. Leary*, 846 F.2d 592, 605 (10th Cir. 1988). Because the warrant was invalid, Appellants' search of Plaintiff's residence violated his Fourth Amendment rights.

We next turn to the second prong of the qualified immunity test—whether the right violated was clearly established. "For a right to be clearly established there must be Tenth Circuit or Supreme Court precedent close enough on point to make the unlawfulness of the officers' actions apparent." *Mascorro*, 656 F.3d at 1208. As a general matter, our precedent clearly establishes a search must be limited to the specific crime for which probable cause exists. Indeed, as the

Supreme Court noted almost thirty years ago: "The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." *Massachusetts v. Sheppard*, 468 U.S. 981, 988 n.5 (1984); s*ee also Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985) ("The particularity requirement ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause."); *Leary*, 846 F.2d at 605 ("The fourth amendment requires not only that the warrant sufficiently specify the evidence to be seized, but also that the scope of the warrant be limited to the specific areas and things for which there is probable cause to search."). However, our review hinges not on whether the right is clearly established "at a high level of generality," but whether there is "clear law (clear answers) that would apply to the situation at hand." *Mascorro*, 656 F.3d at 1208 (internal quotation marks omitted). Thus, an officer will still be entitled to qualified immunity if his actions were objectively reasonable under the specific circumstances of the case. *See id.*

Appellants argue their actions were objectively reasonable under the *Leon* good-faith exception, which applies when officers reasonably rely on a defective search warrant approved by a judge or magistrate. *See United States v. Leon*, 468 U.S. 897 (1984). Although *Leon* involved application of the good-faith exception to the general exclusionary rule, "the same standard of objective reasonableness

that [] applie[d] in the context of a suppression hearing in *Leon* [] defines the

qualified immunity accorded an officer." *Malley v. Briggs*, 475 U.S. 335, 344

(1986).[4]  In other words, the "standard of objective reasonableness set forth in

*United States v. Leon* . . . delineates the degree of qualified immunity accorded an

officer whose request for a warrant ultimately causes an unconstitutional arrest."

*Garmon v. Lumpkin Cnty., Ga.*, 878 F.2d 1406, 1409 (11th Cir. 1989).[5]  Thus, the

analysis of qualified immunity in § 1983 cases tracks the *Leon* analysis from

criminal prosecutions; *Leon* does not provide a separate escape valve for police

officers in qualified immunity cases.  The pertinent question under this analysis is

"whether a reasonably well-trained officer would have known that the search was

illegal despite the magistrate's authorization."  *Malley*, 475 U.S. at 345 (internal

---

[4] In a curious footnote in one of our own cases, we suggested that the *Leon* good-faith exception could possibly provide relief in a § 1983 case where the defendants were found to have violated clearly established law with an affidavit "so lacking in indicia of probable cause as to render official belief in its existence unreasonable," *Malley*, 475 U.S. at 345.  *See Poolaw*, 565 F.3d at 734 n.12.  But since the *Leon* analysis merely defines our examination of qualified immunity in § 1983 claims, a separate analysis would not produce a different result.  *Cf. Junkert v. Massey*, 610 F.3d 364, 369 (7th Cir. 2010) ("[T]he evaluation of qualified immunity in obtaining a search warrant is similar to that used in applying the good-faith standard (in fact, there may be no difference at all in the analysis).").

[5] *See also Juriss v. McGowan*, 957 F.2d 345, 351 (7th Cir. 1992) ("The Supreme Court subsequently held that the suppression standard in *Leon* defines the qualified immunity standard for officers sued under § 1983 for false arrest."); *Johnson v. Walton*, 558 F.3d 1106, 1111 (9th Cir. 2009) ("[T]he *Leon* standard guides the determination of whether an officer is entitled to qualified immunity from § 1983 liability.").

quotation marks omitted).

We conclude a reasonably well-trained officer would have known a search pursuant to such a facially overbroad warrant was illegal under clearly established law. As discussed earlier, the search warrant affidavit did not provide details of any crime other than the alleged larceny of the two firearms. Nothing in the affidavit linked Plaintiff to any impropriety regarding money or drugs. Yet the warrant inexplicably authorized a broad search for financial transaction documents, drugs, and other firearms. A reasonably well-trained officer would have known the affidavit failed to establish probable cause for crimes not even identified. Under the circumstances of this case, a reasonable officer would have known his actions were unlawful because, as the district court stated, "the search warrant was so facially overbroad and the affidavit so lacking in probable cause to support the broad search that the warrant purported to authorize that it could not be reasonably relied upon." (Appellants' App. at 470.)[6]

We next consider the arrest warrant. The district court held the arrest warrant lacked probable cause because the supporting affidavit itself indicated the

---

[6] Appellants also argue the district court should have severed the overbroad portions of the search warrant. Appellants raise this issue for the first time on appeal and offer no authority for applying this doctrine in a civil case. *See Cassady*, 567 F.3d at 637 (noting severability doctrine never applied in civil context, and refusing to decide the issue). Considering our general rule against reviewing issues raised for the first time on appeal, we will not address whether severability could apply here. *See Rhine v. Boone*, 182 F.3d 1153, 1154 (10th Cir. 1999).

Village of Columbus only paid for four firearms and Plaintiff purchased the remaining two firearms. The supplemental affidavit provided:

> On November 21, 2006, Columbus Police Department Chief Paul Armijo received six (6) . . . semi-automatic pistols from . . . D & M Sporting Goods . . . . The Village of Columbus issued Chief Armijo a purchase order for four (4) . . . semi-automatic pistols . . . for the amount of $2,360.00.
>
> After investigators checked D & M Sporting Goods records agents noticed that the bid sheet submitted to the Village of Columbus from D & M Sporting Goods indicated that the Village of Columbus was sold six (6) firearms instead of four (4) in the total amount of $3,144.00. A letter dated October 31, 2006, signed by Chief Armijo to D & M Sporting Goods stated that the six (6) firearms would be used for the Village of Columbus.
>
> An inventory of firearms at the Columbus Police Department revealed only four (4) firearms. Investigators spoke with Columbus Police Officer Tracy Bolduc about the two missing firearms. Officer Bolduc stated that Chief Armijo had purchased one [of] the firearms for personal use and one to give to his father-in-law. . . .

(Appellants' App. at 279.) The arrest warrant was signed by the same judge at the same time as the search warrant.

Appellants claim they are entitled to qualified immunity on Plaintiff's false arrest and false imprisonment claims because the arrest warrant was supported by probable cause. An arrest warrant violates a constitutional right if it lacks probable cause. "Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime." *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996).

-12-

We agree with the district court that the arrest warrant lacked probable cause. The affidavit clearly stated that while the Village of Columbus originally received a bid sheet for six firearms, the Village of Columbus only paid for four firearms, and Plaintiff purchased the remaining two firearms for personal use. The affidavit does not discuss Appellants' purported investigation into whether Plaintiff had embezzled certain cash funds from the department and possibly used those cash funds to pay for the remaining two firearms. Nor does the affidavit indicate Plaintiff was somehow restricted from purchasing these firearms because, for instance, only police departments could legally purchase such firearms. A court cannot rely on evidence not included in the affidavit to establish probable cause. *See Poolaw*, 565 F.3d at 729 n.7.

Appellants argue the affidavit did establish probable cause because it revealed confusion that existed with regard to the firearms transaction. Confusion, though, does not create "a substantial probability that a crime has been committed and that a specific individual committed the crime." *Wolford*, 78 F.3d at 489. The district court stated: "As the only evidence contained in the affidavit regarding payment for the two firearms at issue indicates that Plaintiff, not the Village of Columbus, paid for the firearms, the affidavit does not establish probable cause for Plaintiff's arrest for either larceny of the two firearms, or, alternatively, for embezzlement of the firearms." (Appellants' App. at 472-73.) We agree.

"[I]n the context of an unlawful arrest, not only must the plaintiff demonstrate that the officer arrested her without probable cause (that is, that he violated a constitutional right), but also that it would have been clear to a reasonable officer that probable cause was lacking under the circumstances (that is, that the right was clearly established in the specific situation)." *Koch v. City of Del City*, 660 F.3d 1228, 1241 (10th Cir. 2011). In this case, Appellants failed to provide any reason why Plaintiff's possession of the two firearms was illegal. Their evidence that the purchase order and final invoice did not match is insufficient to suggest larceny or embezzlement where the Village of Columbus paid for four firearms and those four firearms were identified in the Village's inventory. Any reasonable officer would have known an arrest warrant stating Plaintiff had purchased two firearms, without any allegation of criminal activity connected with such purchase, did not create "a substantial probability that a crime has been committed and that a specific individual committed the crime." *Wolford*, 78 F.3d at 489. Indeed, "the warrant application [wa]s so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Malley*, 475 U.S. at 344-45. We agree with the district court that Appellants are not entitled to qualified immunity on the claims arising out of Plaintiff's arrest.[7]

---

[7] The dissent finds in the arrest affidavit an inference that Plaintiff may have used city funds to subsidize his private firearms purchase. Without the

-14-

Lastly, we turn to Plaintiff's First Amendment retaliation claim. Plaintiff alleged Appellants undertook their investigation and prosecution of him in retaliation for his reporting of the mayor's alleged assault to state police. "To establish a First Amendment retaliation claim, a plaintiff must show that (1) he was engaged in constitutionally protected activity, (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct." *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009).

The district court noted Appellants offered no argument regarding the first element, but instead treated it as already established. The district court then held genuine issues of material fact remained as to the second and third element of Plaintiff's retaliation claim, and thus denied summary judgment. "A district court's determination that the record raises a genuine issue of material fact,

---

benefit of any such allegation in the affidavit, however, this inference cannot reasonably be drawn from the facts. Nothing in the affidavit explains why the city received a bid sheet for six firearms but ultimately only purchased four. The affidavit gives no reason why the city paid $2,360 for four firearms, nor does it mention the per-gun price discrepancy between the bid and the purchase. The letter from Plaintiff to D&M Sporting Goods, which stated that the firearms would be used for the city and was written three weeks before the actual transaction, is insufficient to support the inference that Plaintiff was somehow setting up the city to pay a higher per-gun price. Any conclusion otherwise requires too many attenuated inferences to set forth "a substantial probability that a crime ha[d] been committed and that [Plaintiff] committed th[e] crime." *Wolford*, 78 F.3d at 489.

precluding summary judgment in favor of the defendants, is not appealable even in a qualified immunity case." *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1301 (10th Cir. 2009) (internal quotation marks omitted). "We do not have jurisdiction to review the district court's factual findings, including its finding that a genuine issue of fact existed" to preclude summary judgment. *Armijo*, 159 F.3d at 1259. Because the district court found genuine issues of material fact precluded summary judgment, we lack jurisdiction over Appellants' appeal of this issue.

Appellants argue we may nevertheless review the legal issue of whether Appellants' alleged actions violated clearly established law. *See Medina v. Cram*, 252 F.3d 1124, 1130 (10th Cir. 2001) ("Even when the district court concludes issues of material fact exist, we have reviewed the legal question of whether a defendant's conduct, as alleged by the plaintiff, violates clearly established law."). Specifically, Appellants contend reasonable officers would not have known their actions violated clearly established law because this court's precedents at the time of the alleged events did not make clear what type of nexus a plaintiff needed to allege to show causation in a third-party retaliatory arrest case like this one. However, Appellants do not explain how legal uncertainty regarding pleading requirements would cause a reasonable officer to believe he could permissibly retaliate against a plaintiff at the request of a third party. In essence, Appellants' arguments on this point simply ask us to review the district court's conclusion that a jury could find Appellants' conduct to have been

-16-

substantially motivated by Plaintiff's protected conduct of reporting the mayor's alleged battery to state police. We lack jurisdiction to do so.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's denial of summary judgment.

11-2098 *Armijo v. Perales*

**TYMKOVICH**, J., concurring in the judgment in part and dissenting in part.

_____

Although I agree that the search warrant was overbroad, I cannot agree that the arrest warrant lacked probable cause. The facts alleged in the affidavit supported the inference that Chief Armijo diverted Columbus funds to finance a private firearms purchase. In light of the deference we owe to the issuing judge's probable cause determination, we should reverse the district court's denial of summary judgment on Armijo's unlawful arrest and retaliatory prosecution claims.

### A. Unlawful Arrest

#### 1. Legal Standards

In determining whether an arrest warrant is supported by probable cause, we examine the warrant "merely to determine whether the [issuing judge] had a substantial basis to support an independent judgment that probable cause existed." *St. John v. Justmann*, 771 F.2d 445, 448 (10th Cir. 1985). Probable cause means only "a substantial probability that a crime has been committed and that a specific individual committed the crime." *Id.* Although "[w]e review the district court's ruling on the sufficiency of the warrant de novo, . . . we pay great deference to the [issuing judge's] probable cause determination." *Poolaw v. Marcantel*, 565 F.3d 721, 728 (10th Cir. 2009). This deference is rooted in "practical" concerns; warrants

are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity . . . have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

*United States v. Ventresca*, 380 U.S. 102, 108 (1965); *see also Poolaw*, 565 F.3d at 741 ("The question is not whether seeking (or issuing) the search warrant was wrong, but whether it was unreasonable to do so."). In reviewing a warrant, however, "we look not only to the facts supporting probable cause, but also to those that militate against it." *United States v. Valenzuela*, 365 F.3d 892, 897 (10th Cir. 2004).

### 2. *The Affidavit*

Although the majority references some of the facts alleged in the arrest warrant affidavit, they are worth revisiting in further detail. As the majority notes, two relevant documents—the D&M Sporting Goods bid sheet, and the police department purchase order—conflicted regarding the number of guns to be purchased and the amount to be paid. The bid sheet listed six guns for $3,144 ($524 per gun), and the purchase order specified four guns for $2,360 ($590 per gun).

The majority also notes the statement of Officer Bolduc that "Chief Armijo had purchased one [of] the firearms for personal use and one to give to his father-in-law." App. at 361. Although the majority, following the district court, infers

from this statement that Armijo purchased these two firearms *with his own money*, the statement itself does not say that. The investigating officers believed the guns were purchased with city funds. For obvious reasons, a larceny suspect's assertion that he acquired property legally does not defeat probable cause.

Finally, the majority neglects to mention one other piece of evidence in the affidavit: a signed letter from Armijo to D&M Sporting Goods which stated "that the six (6) firearms would be used for the Village of Columbus." App. at 361. The letter does not disclose that two of the weapons were bound for Armijo's private arsenal.

### 3. Discussion

In my view, the facts described above provided a "substantial basis" for the issuing judge to find "a substantial probability that a crime ha[d] been committed" by Armijo. *St. John*, 771 F.2d at 448.

Armijo's arrest warrant listed the offenses of larceny of a firearm and embezzlement. "To the extent probable cause exists for any one of these charges, the arrest was lawful and our analysis is complete." *Lyons v. City of Xenia*, 417 F.3d 565, 573 (6th Cir. 2005). New Mexico defines larceny as "stealing anything of value that belongs to another." N.M. STAT. ANN. § 30-16-1(A). Larceny of a firearm is a subset of larceny with an enhanced penalty. *See* § 30-16-1(H). Embezzlement is defined as "a person embezzling or converting to the person's own use anything of value, with which the person has been entrusted, with

-3-

fraudulent intent to deprive the owner thereof." § 30-16-8(A). The embezzlement charge against Armijo, unlike the larceny charge, was not firearm-specific.

The purchase order showed that the city paid $2,360 to D&M Sporting Goods for four guns, or $590 per gun. But the bid sheet specified $3,144 for six guns, and it is uncontested that Armijo in fact received six guns, transferring four to the city and keeping two for himself. A rational inference is that Armijo only paid out of his own pocket the difference between $3,144 and $2,360—that is, $784. That amounts to $392 per gun, which is $198 per gun less than the city paid. A reasonable conclusion is that Armijo intentionally used city funds to *subsidize* his own private purchase of firearms, thereby committing embezzlement.

Perhaps there was a perfectly innocent reason why Armijo received a much lower price. But why, then, the letter to D&M Sporting Goods explicitly representing that all six weapons were for municipal use? One reasonable explanation is that Armijo was deliberately lying to D&M Sporting Goods in order to hide his scheme. This inference strengthens the likelihood of criminal activity.

These facts likely would be insufficient to prove Armijo committed a crime. But "probable cause requires 'a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *United States v.*

-4-

*Biglow*, 562 F.3d 1272, 1283 n.3 (10th Cir. 2009) (quoting *New York v. P.J. Video, Inc.*, 475 U.S. 868, 877–78 (1986)).

The majority believes we cannot uphold the issuing judge's probable cause determination without piling inference on inference. I disagree. The critical question is whether, in light of all the facts alleged, the inference is a *reasonable* one.

The majority suggests that the warrant should have alleged that Armijo diverted city funds to finance a private firearms purchase. The government, of course, did not know *for a fact* that Armijo committed the charged crimes; nor was it required to. The role of an affidavit is to allege facts, not inferences, and the facts it did allege support the conclusion that Armijo used city funds to subsidize his purchase. The only real inference is *why* Armijo got a better deal. In combination with the evidence showing a discrepancy between what Armijo told D&M Sporting Goods and what he requested from the city, the issuing judge had reason to infer a substantial probability of unlawful conduct.

### B. Retaliatory Prosecution

My conclusion regarding the lawfulness of Armijo's arrest necessitates my dissent on the issue of retaliatory prosecution.

A plaintiff bringing a claim of retaliatory prosecution is required to plead and prove, as an element of the claim, the absence of probable cause. *Hartman v. Moore*, 547 U.S. 250, 265–66 (2006); *see also Reichle v. Howards*, 132 S. Ct.

2088, 2095 (2012) (reaffirming *Hartman*). This is because retaliatory prosecution (as opposed to retaliatory arrest) involves a "complex" causal chain between the government official harboring the retaliatory animus and the officer who carries out the retaliatory action. *Hartman*, 547 U.S. at 261. "Accordingly, the significance of probable cause or the lack of it looms large, being a potential feature of every case." *Id.* at 265. Combined with the "presumption of regularity behind the charging decision," the existence of probable cause defeats a retaliatory prosecution claim. *Id.* This is true even when the evidence of a retaliatory motive is quite significant. *Cf. id.* at 266 (Ginsburg, J., dissenting).

Here, Armijo was arrested pursuant to a valid warrant supported by probable cause. Thus, his retaliatory prosecution claim must fail.

### C. *Search Warrant*

I concur in the majority's conclusion that the search warrant was unconstitutionally overbroad, and that the right at issue was clearly established. My view differs slightly, in that I would find the warrant's authorization of a search for financial documents permissible based on the evidence pertaining to embezzlement. I nonetheless concur because, as the majority explains, the affidavit contained no arguable basis for a search for narcotics-related items, and the defendants did not raise a severability argument below.

\* \* \*

For the reasons stated above, I would affirm the district court's denial of summary judgment on Armijo's unlawful search claim, but reverse with regard to the unlawful arrest and retaliatory prosecution claims.