**UNITED STATES of America, Plaintiff,**

v.

**APPROXIMATELY $3,174.00 IN UNITED STATES CURRENCY, Defendant.**

**Case No. 12–C–20.**

United States District Court, E.D. Wisconsin.

Sept. 19, 2012.

Scott J. Campbell, United States Department of Justice, Milwaukee, WI, for Plaintiff.

## DECISION AND ORDER DENYING CLAIMANT'S MOTION TO SUPPRESS

WILLIAM E. CALLAHAN, JR.,
United States Magistrate Judge.

### I. BACKGROUND

On March 18, 2011, Milwaukee police officers entered the residence of Jonathan Marshall ("Marshall") pursuant to a search warrant and seized, among other things, drugs, weapons, and $3,174 in United States currency. On January 6, 2012, the government filed a civil complaint, alleging that the $3,174 is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6). Through

counsel, Marshall answered the complaint and filed a claim, denying that the defendant currency was drug money. On August 14, 2012, Marshall moved *pro se* to suppress the evidence seized from his residence pursuant to Supplement Admiralty and Maritime Claims Rule G(8)(a) (hereinafter, "Rule G"), arguing that the search warrant was issued without probable cause. The motion has been fully briefed and is now ready for resolution. For the following reasons, the motion will be denied.

## II. FACTS

Michael Slomczewski, an officer in the Milwaukee Police Department with experience in drug-trafficking investigations, applied for a warrant to search Marshall's residence and submitted an affidavit in support. (Affidavit, ECF No. 27–1.) As set forth in the affidavit, on November 18, 2010, Deyul Thames was arrested and charged in state court with possession of cocaine with intent to deliver, due, in part, to information and access provided to the police by Thames's girlfriend, Alicia.

While incarcerated, Thames made a number of phone calls to a certain female. By listening to these and other calls, Slomczewski learned that the female was Thames's daughter, Felisha. Thames told Felisha that she needed to talk to "old girl," referring to Alicia, and tell Alicia "to do what needs to be done." Thames also told Felisha to "drill that script into her (Alicia)," and that Alicia "just needs to do what she has to do if she knows what is good for her." At one point, Thames had Felisha write down an encrypted message for "Pops," which was decoded by another officer to read, "MZ BITCH HAS TO BE KILLED BY TKE SECOND."

Thames and Felisha were charged in state court with conspiracy to commit first degree intentional homicide. And on December 20, 2010, Circuit Court Judge Rebecca Dallet revoked Thames's visitation, phone, and mail privileges. Despite these developments, Thames continued to make phone calls while incarcerated. Slomczewski listened to calls between Thames and "Nip." During one call, Thames told "Nip" to make a three-way call to a certain number, which was traced to a woman named Elizabeth.

Slomczewski interviewed Elizabeth, who admitted to speaking to Thames while he was in custody. Elizabeth also turned over a letter postmarked on February 15, 2011, from another inmate at the Milwaukee County Jail. Elizabeth said that the letter was really from Thames and contained instructions for her to find Alicia at one of two locations. On March 8, 2011, a homicide took place at one of those locations; Alicia's brother-in-law was shot and killed, and her nephew was shot in the chest. The letter also instructed Elizabeth to visit two other inmates charged in the conspiracy, one of which was "Pops," and to tell the inmates what to say at Thames's trial.

Elizabeth said that Thames further instructed her to give part of the letter to "Nip." Elizabeth's daughter, Jennifer, had previously dated Thames and identified Marshall as "Nip." Jennifer and Alicia both identified Marshall's residence as "Nip's". In the letter, Thames referenced writings on the top of some of the pages that Thames sent to Nip. The letter to Elizabeth had no writings on the top of the pages, so Slomczewski inferred that Thames sent previous letters to Marshall that contained further evidence of witness intimidation.

On March 18, 2011, upon searching Marshall's house, officers seized over 100 grams of marijuana, digital scales, the aforementioned $3,174, weapons and ammunition, and a bullet-proof vest. Shortly thereafter, Marshall was charged in state

court with five counts: (1) felon in possession of a firearm; (2) felon in possession of body armor; (3) possession of an electric weapon; (4) possession of marijuana with intent to deliver; and (5) maintaining a drug-trafficking place. Marshall filed a motion to suppress the evidence seized on March 18. Judge Dallet heard arguments and denied the motion based on a finding of probable cause. (Transcript, ECF No. 28–1.) Marshall then pleaded guilty to the first two counts charged and also to possession of marijuana. He was sentenced to two years in prison.

On January 6, 2012, the government filed its civil forfeiture complaint pursuant to 21 U.S.C § 881(a)(6), alleging that the defendant currency seized from Marshall's residence was used, or intended to be used, in exchange for controlled substances, or represents proceeds of trafficking in controlled substances, or was used or intended to be used to facilitate a violation of Title II of the Controlled Substances Act. (Complaint, ECF No. 1.) Marshall filed an answer and a claim to the property. (Answer, ECF No. 7; Claim, ECF No. 8.) He now moves to suppress the evidence seized during the March 18 search. (Motion, ECF No. 27.)

### III. DISCUSSION

■ Rule G(8)(a) provides that "[i]f the defendant property was seized, a party with standing to contest the lawfulness of the seizure may move to suppress use of the property as evidence." A motion to suppress brought by a claimant in a civil forfeiture proceeding is akin to the one brought by a defendant in a criminal case. *See United States v. $80,633.00*, 512 F.Supp.2d 1196, 1202 (M.D.Ala.2007). Here, Marshall moves to suppress on the grounds that the search warrant was issued without probable cause. "A search-warrant application will be sufficient to support a probable-cause finding if, 'based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime.'" *Betker v. Gomez*, 692 F.3d 854, 862 (7th Cir.2012) (quoting *United States v. Peck*, 317 F.3d 754, 756 (7th Cir.2003)). To repeat, the search of Marshall's residence aimed to uncover proof that Thames engaged in witness intimidation. *See* Wis. Stat. § 940.43.

The affiant, Officer Slomczewski, overheard Thames instruct his daughter, Felisha, to talk to his girlfriend, Alicia, who had provided information to the police that led to Thames's incarceration. Thames told Felisha to "drill that script into her (Alicia)," and that Alicia "just needs to do what she has to do if she knows what is good for her." Slomczewski also listened to calls between Thames, a woman named Elizabeth, and "Nip." Slomczewski interviewed Elizabeth, who admitted to speaking to Thames while he was in custody. Elizabeth also turned over a letter from Thames, instructing her to find Alicia and to tell two other inmates what to say at Thames's trial. Thus, contrary to Marshall's assertion, there was ample factual evidence that Thames was engaged in witness intimidation.

Elizabeth was also instructed to deliver part of the letter to "Nip." Elizabeth's daughter, who had dated Thames, identified Marshall as "Nip"; Alicia and Elizabeth's daughter both confirmed "Nip's" residence. The part of the letter sent to Elizabeth for "Nip" referenced other letters. Based on all of the above facts, a reasonably prudent person would believe that a search of Marshall's residence would uncover previous letters that Thames sent to Marshall, which, in turn, would likely contain further evidence of witness intimidation. The court therefore disagrees with Marshall that Officer Slomczewski submitted a "bare-bones" affidavit. Rath-

er, the totality of the circumstances indicates that the search warrant was supported by probable cause.

██ Moreover, even if the warrant were unsupported by probable cause, suppression would not be required because there is no indication that "the magistrate abandoned his detached and neutral role ... [or] the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Leon,* 468 U.S. 897, 926, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *see also United States v. 15324 Cnty. Highway E.,* 332 F.3d 1070, 1076 (7th Cir.2003) (applying *Leon's* "good-faith" exception in civil forfeiture case). Officer Slomczewski would have had no reason to question the warrant here because, as previously discussed, his affidavit pointed to significant circumstantial evidence indicating that Thames was engaged in witness intimidation and that further evidence of that crime would be located in Marshall's residence. *See United States v. Sleet,* 54 F.3d 303, 307 (7th Cir.1995).

██ Finally, although the government does not raise the issue (and its resolution is unnecessary to the court's holding), Marshall's probable cause argument is likely barred by the doctrine of collateral estoppel. *See generally Best v. City of Portland,* 554 F.3d 698, 700 (7th Cir.2009) (discussing when a district court may raise collateral estoppel, an affirmative defense, *sua sponte* ). In Wisconsin,[1] "[o]ffensive collateral estoppel occurs when the plaintiff seeks to foreclose a defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *Michelle T. v. Crozier,* 173 Wis.2d 681, 495 N.W.2d 327, 328 n. 1 (1993). Here, Marshall previously liti-

gated the probable cause issue unsuccessfully in conjunction with the state court prosecution, and there is no indication that he was not fully motivated in that proceeding. *See, e.g., United States v. 6380 Little Canyon Rd.,* 59 F.3d 974, 979–80 (9th Cir. 1995) (finding claimant collaterally estopped from raising Fourth Amendment issue as a defense to the civil forfeiture action), *abrogation on other grounds recognized by United States v. $273,969.04,* 164 F.3d 462, 466 n. 3 (9th Cir.1999).

For all of these reasons, Marshall's motion to suppress cannot succeed.

**NOW THEREFORE IT IS ORDERED** that the claimant's "Motion to Suppress Property Used as Evidence" be and hereby is **DENIED;**

## ORDER DENYING CLAIMANT'S MOTION FOR RECONSIDERATION

On March 18, 2011, Milwaukee police officers entered the residence of Jonathan Marshall ("Marshall") pursuant to a search warrant and seized, among other things, $3,174 in United States currency. On January 6, 2012, the government filed a civil complaint, alleging that the $3,174 is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6). Through counsel, Marshall answered the complaint and filed a claim, denying that the defendant currency was drug money.

On August 14, 2012, Marshall moved *pro se* to suppress the evidence seized from his residence, arguing that the search warrant was issued without probable cause. On September 19, 2012, the court denied Marshall's motion to suppress. Specifically, the court held that "the totality of the circumstances indicates that the search warrant was supported by probable

---

1. Marshall's motion to suppress was decided by a Wisconsin court, so Wisconsin law determines the preclusive effect of the decision in

federal court. *See Cannaday v. Sandoval,* 458 Fed.Appx. 563, 566 (7th Cir.2012).

cause," and that "even if the warrant were unsupported by probable cause, suppression would not be required" because the "good-faith" exception applied. (Decision and Order at 1039.) Finally, the court noted that, "although the government does not raise the issue (*and its resolution is unnecessary to the court's holding*), Marshall's probable cause argument is *likely* barred by the doctrine of collateral estoppel." (Decision and Order at 1039 (emphasis added).)

On October 4, 2012, Marshall filed a motion for reconsideration of the court's decision and order denying his motion to suppress. As grounds for the motion, Marshall argues that he "has not been given a full and fair opportunity to litigate his claim in the prior court, therefore, the coll[a]teral estoppel doctrine should not apply in this case." (Motion at 2.) Specifically, Marshall asserts that the application of collateral estoppel is fundamentally unfair given (1) the state court judge's allegedly erroneous adjudication of the suppression issue, and (2) his state court counsel's allegedly ineffective assistance. (Motion at 2, 6.)

As set forth above, however, the collateral estoppel issue did not dictate the outcome of Marshall's motion to suppress in this court. Rather, I explicitly denied Marshall's motion to suppress based on a finding of probable cause and the applicability of the "good-faith" exception. At no point in his motion for reconsideration does Marshall challenge these determinations. For this reason, Marshall's motion for reconsideration must be denied.

**NOW THEREFORE IT IS ORDERED** that the claimant's "Motion for Reconsideration of Decision and Order Denying Claimant's Motion to Suppress" be and hereby is **DENIED**;

**SO ORDERED** this 9th day of October 2012, at Milwaukee, Wisconsin.