**UNITED STATES of America,
Plaintiff,**

v.

**APPROXIMATELY $3,174.00 IN UNITED STATES CURRENCY,
Defendant.**

**Case No. 12–C–20.**

United States District Court,
E.D. Wisconsin.

March 8, 2013.

See also, 928 F.Supp.2d 1035, 2012 WL 7679551.

Scott J. Campbell, United States Department of Justice, Milwaukee, WI, for Plaintiff.

## DECISION AND ORDER DENYING CLAIMANT'S MOTION FOR ORDER REGARDING ADMINISTRATIVE OFFSET AND FOR LITIGATION COSTS [1]

WILLIAM E. CALLAHAN, JR.,
United States Magistrate Judge.

### I. BACKGROUND

On March 18, 2011, Milwaukee police officers entered the residence of Jonathan Marshall ("Marshall") pursuant to a search warrant and seized over 100 grams of marijuana, digital scales, weapons, ammunition, a bullet-proof vest, and $3,174 cash. Shortly thereafter, Marshall was charged in state court with five counts: (1) felon in possession of a firearm, (2) felon in possession of body armor, (3) possession of an electric weapon, (4) possession of marijuana with intent to deliver, and (5) maintaining a drug-trafficking place. Marshall's motion to suppress the evidence seized on March 18 was denied based on a finding of probable cause. Marshall then pleaded guilty to the first two counts, as well as to possession of marijuana. He was sentenced to two years in prison.

On January 6, 2012, the government filed a civil complaint, alleging that the $3,174 was subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6). Through counsel,

---

1. Claimant's motion is entitled "Memorandum of Law & Motion for entry of an order for litigation cost pursuant to 28 U.S.C. § 2465," and is so reflected on the docket. But because he clearly requests an order regarding administrative offset in addition to litigation costs, the court has retitled its decision and order accordingly.

Marshall answered the complaint and filed a claim, denying that the cash was drug money. On August 14, 2012, Marshall moved *pro se* to suppress the evidence seized from his residence, arguing that the search warrant was issued without probable cause. On September 19, 2012, 928 F.Supp.2d 1035, 2012 WL 7679551 (E.D.Wis.2012) this court denied Marshall's motion to suppress, holding that: (1) the search warrant was supported by probable cause; and (2) the "good-faith" exception applied.[2] Marshall's subsequent motion for reconsideration was also denied.

On October 18, 2012, the government moved to dismiss the action pursuant to Federal Rule of Civil Procedure 41(a)(2). The government also stated that, should the court grant the motion to dismiss, it would return the defendant property to Marshall, less any debt that the United States is authorized to collect under the Treasury Department's Treasury Offset Program ("TOP"). The court dismissed the action the next day.

On October 29, 2012, Marshall—who undisputedly owes the government nearly $9,000 on two defaulted federal student loans—filed a motion, requesting that the court: (1) declare that the $3,174 is not subject to administrative offset, and (2) award Marshall $325 in litigation costs. After the court granted multiple extensions of time for both parties, the motion is now fully briefed and ready for resolution. For the following reasons, the motion will be denied.

**2.** The court also noted, in passing, that Marshall's probable cause argument was likely barred by the doctrine of collateral estoppel.

**3.** In his reply brief, Marshall argues that this definition is illogical "for it is not possible to 'withhold' funds 'payable'" and because "nothing can be 'held' while simultaneously being released." (Reply at 3, 5.) The court

## II. DISCUSSION

### A. Administrative Offset

■ Marshall first requests a declaration that the $3,174 is not subject to administrative offset. The Debt Collection Improvement Act of 1996 ("DCIA") defines "administrative offset" as "withholding funds payable by the United States ... to, or held by the United States for, a person to satisfy a claim."[3] 31 U.S.C. § 3701(a)(1); *accord* 31 C.F.R. § 285.5(b) (defining "offset"). The DCIA further specifies that, "[e]xcept as otherwise provided in this subsection, a disbursing official ... *shall offset* at least annually the amount of a payment which a payment certifying agency has certified to the disbursing official for disbursement, by an amount equal to the amount of a claim which a creditor agency has certified to the Secretary of the Treasury pursuant to this subsection." 31 U.S.C. § 3716(c)(1)(A) (emphasis added).

A Treasury regulation specifies the mechanics of administrative offset to collect nontax debts, such as delinquent student loans, owed to the government. *See* 31 C.F.R. § 285.5. The regulation also explains which "[p]ayments made by the United States" are eligible for offset:

> Except as set forth in paragraph (e)(2) of this section, *all Federal payments* are eligible for offset under this section. Eligible Federal payments include, *but are not limited to,* Federal wage, salary, and retirement payments, vendor and expense reimbursement payments, certain

disagrees. The statute merely authorizes the government to retain funds that would *otherwise* need to be paid. Here, as explained in more detail below, the seized funds were "held" by the government pending the outcome of the civil forfeiture proceeding. And the funds were also "payable" by the government once the action was dismissed.

benefit payments, travel advances and reimbursements, grants, fees, refunds, judgments (including those certified for payment pursuant to 31 U.S.C. 1304), tax refunds, *and other payments made by Federal agencies.*

*Id.* § 285.5(e)(1) (emphasis added).

Despite this broad language, Marshall argues that the return of seized currency does not constitute a "Federal payment," citing the only case to have addressed the issue, *In re Return of Seized Property,* No. 11CV1091, 2011 WL 3759702 (S.D.Cal. Aug. 23, 2011). In *Return of Seized Property,* the claimants brought suit seeking immediate return of their currency, which was seized for forfeiture as suspected drug proceeds but never subjected to a civil forfeiture action. *Id.* at *1. The government agreed to return the funds but only after administrative offset. *Id.* The court found that the property was not subject to administrative offset, reasoning only as follows:

> Here, the currency was in the custody of the Federal government pending the determination of whether it was subject to seizure. After the 90–day period, [the claimants] were entitled to the *return* of their property. The Court does not believe that the *return* of seized currency constitutes a "Federal payment." The *return* of property is not a payment of benefits, "refund," or "reimbursement" from public money.

*Id.* at *2.

Return of Seized Property is not persuasive. First, the court found that "the return of seized currency [does not] constitute[ ] a 'Federal payment.'" *Id.* The term "Federal payments" is undefined in the regulation, indicating that it has its usual meaning—namely, "[p]ayments made by the United States." 31 C.F.R. § 285.5(e) (caption). And here, there is no indication that the seized property could be returned by means other than such a payment. Specifically, according to the director of the Justice Department's Asset Forfeiture Management Staff, when seized cash is not held for evidence, it is deposited into a "suspense account" maintained by the Treasury Department. (Olds Decl. at ¶¶ 5, 6.) If the U.S. Attorney's Office declines to prosecute or settles a civil forfeiture matter, it notifies the U.S. Marshals Service which, in turn, requests that the Treasury *make a payment* by completing a certified payment voucher and submitting it to the Treasury for disbursement. (*Id.* at ¶ 9.)

Second, the court in *Return of Seized Property* found that "[t]he *return* of property is not a payment of benefits, 'refund,' or 'reimbursement' from public money." 2011 WL 3759702, at *2. The court implied that the payment must be listed in the regulation to be eligible for offset. But, as previously discussed, the regulation's examples are nonexclusive.[4] *See* 31 C.F.R. § 285.5(e)(1) (stating that "[e]ligible Federal payments include, *but are not limited to,*" benefit payments, refunds, etc., "*and other payments made by Federal agencies*") (emphasis added). The court in *Return of Seized Property* also implied that the payment must be "from public money." But again, the regulation is not so limited. *See, e.g., id.* § 285.5(b) (defining "offset" as "withholding funds payable by the United States to, or held by the United States for, a person to satisfy a debt owed by the payee"); *id.* § 285.5(e)(1) (stating that, unless specifically exempted,

---

4. Even if the list were not merely illustrative, the return of seized property would arguably be a "refund" and therefore an eligible "Federal payment." *See, e.g.,* Webster's Third New International Dictionary 1919 (1993) (defining "refund" as "to return (money) in restitution, repayment, or balancing of accounts").

"all Federal payments are eligible for offset").

█ Moreover, even if the regulation were ambiguous as to the meaning of "Federal payment," the court may consider the Treasury's own interpretation. "Where an agency has authoritatively interpreted its own rule, courts generally defer to that reading unless it is 'plainly erroneous or inconsistent with the regulation.'" *Exelon Generation Co., LLC v. Local 15, Int'l Bhd. of Elec. Workers, AFL–CIO,* 676 F.3d 566, 570 (7th Cir.2012) (citing *Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997)). *But see, e.g., id.* at 576–78 & n. 6 (limiting *Auer* in certain circumstances). Here, according to the director of the Treasury Offset Division, based on legal advice, in 2010, TOP staff determined that payments representing the return of seized assets were "Federal payments" for purposes of offset pursuant to 31 C.F.R. § 285.5(e); the agency's determination has not since changed. (Riedl Decl. at ¶¶ 10–11.) For the reasons set forth above, such an interpretation is not "plainly erroneous or inconsistent with the regulation." Accordingly, Marshall's request to exempt his property from administrative offset will be denied.[5]

## B. Litigation Costs

█ Marshall also requests $325 in litigation costs pursuant to 28 U.S.C. § 2465. That statute provides that the government shall be liable for certain amounts, including attorney's fees and other litigation costs, in a civil forfeiture proceeding "in which the claimant substantially prevails." *Id.* § 2465(b)(1). Here, the court dismissed the action pursuant to Federal Rule of Civil Procedure 41(a)(2). That rule explains that, "[u]nless the [court's] order states otherwise, a dismissal under this paragraph (2) is *without prejudice.*" Fed.R.Civ.P. 41(a)(2) (emphasis added). My order of dismissal did not so state. And a dismissal without prejudice does not "bestow prevailing party status on [claimants] because it effect[s] no 'change in the legal relationship of the parties.'" *United States v. Minh Huynh,* 334 Fed.Appx. 636, 639 (5th Cir.2009) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,* 532 U.S. 598, 605, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001)).

Rather than dispute this case law, Marshall argues that denying litigation costs (as well as allowing administrative offset) would be unfair. Specifically, Marshall maintains that his motion should be granted "unless the government has an interest in depriving its citizens of the requisite food and shelter my son and fiance need." (Reply at 11.) I sympathize with Marshall and his desire to provide for his family. But Marshall fails to recognize that the government has not simply "taken someone's food [and] rent money illegally and has declared that it should be better off used to pay off a student loan." (*Id.* at 10.) Rather, the currency—along with drugs, weapons, and drug paraphernalia—was seized pursuant to a valid search warrant. Thereafter, Marshall was convicted of three crimes. And the currency is only subject to offset because Marshall has long

---

**5.** In his reply brief, Marshall raises constitutional issues not mentioned in his opening brief. For example, Marshall claims that his due process rights were violated by the government's "holding (temporarily) the property for administrative offset." (Reply at 6.) Marshall also argues that the funds were illegally seized in violation of his Fourth Amendment rights. (*Id.*) Marshall's first argument is difficult to understand, considering his admission that the government "may have afforded [him] due process regarding the administrative offset of certain funds." (*Id.*) And his illegal seizure argument has been rejected twice by this court. Thus, even if these issues were not waived, they are meritless.

been delinquent on his federal student loans. Accordingly, the court respectfully disagrees with Marshall that the only fair outcome would be granting his motion.

**NOW THEREFORE IT IS ORDERED** that the claimant's motion for order regarding administrative offset and for litigation costs be and hereby is **DENIED;**