**UNITED STATES of America,
Plaintiff,**

v.

**$37,000 UNITED STATES CURRENCY,
Defendant.**

**Julian Finch, Claimant.**

**No. 1:14–cv–01799–JMS–DKL.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Signed July 15, 2015.

Debra G. Richards, United States Attorney's Office, Indianapolis, IN, for Plaintiff.

$37,000.00 United States Currency, pro se.

Jeffrey A. Baldwin, Voyles Zahn & Paul, Indianapolis, IN, for Claimant.

### ORDER DENYING CLAIMANT'S MOTION TO ENFORCE JUDGMENT

JANE MAGNUS–STINSON, District Judge.

Presently pending before the Court is Claimant Julian Finch's Motion to Enforce Order of December 24, 2014. [Filing No. 14.] In his Motion to Enforce, Mr. Finch argues that the Government failed to return $11,100 in seized currency, in violation of an agreement between Mr. Finch and the Government, which this Court then approved. [Filing No. 11.] While a forfeiture hold on the $11,100 was released by the United States Marshal Service in accordance with the agreement, the money was intercepted by an agent of the United States Treasury Department (the *"Treasury Department"*) to pay back child support owed by Mr. Finch. Mr. Finch asks the Court to undo that interception, and release the money to him. For the following reasons, the Court **DENIES** Mr. Finch's Motion to Enforce. [Filing No. 12.]

## I.

### BACKGROUND

The factual and procedural history of the case are not disputed. On March 4, 2014, Julian Finch was pulled over by Indiana State Police Trooper Joseph Winters for speeding and following too closely. Trooper Winters approached the vehicle and noticed the car smelled strongly of marijuana. The driver identified himself as Mr. Finch and was shaking as he provided Trooper Winters with his driver's license. Trooper Winters searched the vehicle and found several lighters, a large amount of loose green material, multiple flip phones, a pager, and a bag containing $37,000 of United States currency. Mr. Finch was charged with possession of marijuana. Believing the money was to be used to violate the Controlled Substances Act, 31 U.S.C. § 881(a)(6), the Indiana State Police seized the $37,000 found in Mr. Finch's vehicle and took the currency into custody.

On March 19, 2014, the Clinton County Circuit Court relinquished jurisdiction over the $37,000 and the money was transferred to the United States. Specifically, the DEA took possession of the currency on or around April 15, 2014 and turned it over to the United States Marshal Service (*"USMS"*). The USMS deposited the seized currency into the Seized Assets Deposit Fund—an account maintained by the Treasury Department to temporarily hold seized currency—on April 21, 2014.

The Government filed its Complaint of Forfeiture in Rem against the currency on November 3, 2014. [Filing No. 1.] Mr. Finch filed a Motion to Dismiss on November 26, 2014, which the Court denied. [Filing No. 9.] On December 18, 2014, Mr. Finch and the Government entered into a

Stipulation and Agreement to Judgment of Forfeiture, in which Mr. Finch agreed that there was a reasonable cause for the seizure of the $37,000. [Filing No. 10 at 2.] As part of the Agreement, Mr. Finch was to receive $11,100 of the seized currency, with the remaining $25,900 forfeited to the United States. [Filing No. 10 at 2.] The Court approved the agreement in an Order of Forfeiture and Judgment on December 24, 2014. [Filing No. 11.]

On January 7, 2015, the United States requested that the USMS release $11,100 of the $37,000 held in the Seized Assets Detention Fund. [Filing No. 12.] Accordingly, the USMS moved to disburse the monies via a payment from the Treasury Department's disbursing agent, the Bureau of Fiscal Service. [Filing No. 17–12.] Before making any payment, the Bureau of Fiscal Service first checks to see if the payee owes any outstanding debts, in accordance with 31 U.S.C. § 3716. Should an obligation in the payee's name be found, the Bureau of Fiscal Service will offset the payment in the amount of the debt before returning the remainder to the payee. *See* 31 U.S.C. § 3716(c)(1)(A).

As it turned out, Mr. Finch owed two delinquent child support debts to the State of Indiana. [Filing No. 17–6 at 1; Filing No. 17–7 at 1.] The Bureau of Fiscal Service thus initiated an administrative offset in order to apply the payment of $11,100 to Mr. Finch's outstanding obligations. [Filing No. 14–1 at 1.] This offset resulted in Mr. Finch receiving only $1 of the $11,100 established in the parties' settlement agreement. [Filing No. 14–1 at 1.]

Mr. Finch brings the instant motion in an attempt to recover the remaining the $11,099. [Filing No. 14.]

## II.

### DISCUSSION

Mr. Finch challenges the Government's actions on two grounds. First, Mr. Finch argues that the Government acted in violation of the Court's Order of Forfeiture and Judgment. [Filing No. 14 at 2.] Second, Mr. Finch argues that the Government failed to abide by the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. [Filing No. 14 at 2.] The Court will evaluate these arguments in turn.

### A. Claim for Violation of Court Order

■ Mr. Finch argues that the Government acted in violation of the Court's Order of Forfeiture and Judgment. He contends that the plain language of the Court's order "clearly requires the United States to return the currency," [ Filing No. 14 at 2], and that "instead of simply returning the property—what the order requires—the Government has treated the defendant currency as a federal payment" subject to administrative offset. [ Filing No. 14 at 3.] Mr. Finch argues that the return of the seized monies should not be processed as a "federal payment" by the Treasury Department. [Filing No. 14 at 3.]

In response, the Government argues that the Debt Collection Improvement Act of 1996 ("DCIA") and corresponding regulations make clear that the money at issue constitutes a "federal payment," and is therefore subject to offset. [Filing No. 17 at 16–20.] Mr. Finch did not file a reply brief addressing the Government's arguments regarding the DCIA.

Under the DCIA, an "administrative offset" is defined as "withholding funds payable by the United States (including funds payable by the United States on behalf of a State government) to, or held by the United States for, a person to satisfy a claim." 31 U.S.C. § 3701(a)(1). The DCIA states that "a disbursing official ... shall offset at least annually the amount of a payment which a payment certifying

agency has certified to the disbursing official for disbursement, by an amount equal to the amount of a claim which a creditor agency has certified to the Secretary of the Treasury pursuant to this subsection." 31 U.S.C. § 3716(c)(1)(A). A regulation further explains which payments to the United States are eligible for offset:

> Except as set forth in paragraph (e)(2) in this section, all Federal payments are eligible for offset under this section. Eligible Federal payments include, *but are not limited to*, Federal wage, salary, and retirement payments, vendor and expense reimbursement payments, certain benefit payments, travel advances and reimbursements, grants, fees, refunds, judgments (including those certified for payment pursuant to 31 U.S.C. 1304), tax refunds, *and other payments made by Federal agencies.*

31 C.F.R. § 285.5(e)(1) (emphases added).

The broad language of the regulation, which essentially encompasses all payments made by federal agencies unless explicitly exempted, appears to include the payment made by the Treasury Department in this case. However, two district court cases have addressed this question and reached differing conclusions. In *In re Return of Seized Property*, 2011 WL 3759702 (S.D.Cal.2011), the court held that a return of seized currency is not subject to administrative offset, reasoning: "[t]he Court does not believe that the return of seized currency constitutes a 'Federal payment.' The return of property is not a payment of benefits, 'refund,' or 'reimbursement' from public money." *Id.* at *2.

The reasoning in *In re Return of Seized Property* was rejected in *United States v. $3,174.00*, 928 F.Supp.2d 1040 (E.D.Wis.2013). In the latter case, the court reasoned that *In re Return of*

*Seized Property* "implied that the payment must be listed in the regulation to be eligible for offset," but—as the language of the regulation makes clear—the "regulation's examples are nonexclusive." *Id.* at 1043–44. Moreover, as is the case here, for the claimant to receive his money, the USMS requests that the Bureau of Fiscal Service (the Treasury Department's disbursing agent) make a payment to him. [Filing No. 17–2.] Such a process, reasoned the Court, clearly constitutes the "mak[ing of] a payment" under the regulation. *$3,174.00*, 928 F.Supp.2d at 1043.

The Court agrees with the reasoning in *$3,174.00*. The language of 31 C.F.R. § 285.5(e)(1) makes explicit that "all Federal payment are eligible for offset" unless expressly excluded, and this includes certain payments specifically listed and "other payments made by Federal agencies."[1] And for Mr. Finch to receive his money, the USMS must request that a *payment* be made to him by the Bureau of Fiscal Service; it is not simply that the USMS seizes then returns the money. [*See* Filing No. 17–2.] The Court in *In re Return of Seized Property* failed to address the broad language of § 285.5(e)(1) in reaching the opposite conclusion, and thus the Court is unpersuaded by the reasoning adopted in that case.

Mr. Finch's only argument to the contrary—that the terms of the Court's order preclude administrative offset—is a nonstarter. The Court's Order of Forfeiture stated:

> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that eleven thousand one hundred dollars and zero cents ($11,100.00) of the total defendant currency shall be released to the Claim-

---

1. Mr. Finch does not discuss, let alone challenge, the Government's reliance on this regulation or its applicability in the instant case.

ant, Julian Finch, through his attorney, Jeffrey A. Baldwin, and that twenty-five thousand nine hundred dollars and zero cents ($25,900.00) is hereby FORFEITED to the United States of America to be disposed of according to law. [Filing No. 11 at 1.] The Court's order is silent with respect to the issue of administrative offset. Merely because the money was ordered "released" to Mr. Finch, does not mean that the money is not subject to administrative offset as provided by the DCIA.

For these reasons, the money at issue in this case was subject to administrative offset under the DCIA.

### B. Supplemental Rules Challenge

 Mr. Finch argues that the "Supplemental Rules do not authorize the return of the defendant currency to be treated as a federal payment." [ Filing No. 14 at 3.] Specifically, he contends that Rule E of the Supplemental Rules—which states that the USMS must take possession of seized property for safekeeping—does not expressly authorize the Treasury Department to take custody of seized cash then release it as a payment subject to administrative offset. [Filing No. 14 at 3.]The Government does not directly reply to Mr. Finch's argument. [*See* Filing No. 17.].

The Government filed this action pursuant to Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. [Filing No. 7 at 1–2.] Supplemental Rule G provides that to the extent it "does not address an issue, Supplemental Rules C and E . . . also apply." Supplemental Rule E provides that if "tangible property is to be attached or arrested, the marshal or other person or organization having the warrant shall take it into the marshal's possession for safe custody."

Mr. Finch's reliance on Supplemental Rule E does not advance his position that the Government's offset was improper. Supplemental Rule E merely requires the USMS to take the seized property into custody, which is what occurred in this case. It does not, as Mr. Finch suggests, address—let alone limit—what the USMS can or cannot do with the property once it has custody over it. Thus, while the Supplemental Rules do not expressly authorize the USMS to transfer the seized property to an account managed by the Treasury Department and release it as a payment subject to administrative offset, the Supplemental Rules do not forbid such action either. Indeed, they are silent on this matter. Accordingly, Mr. Finch's reliance on Supplemental Rule E fails to support his position that the administrative offset of his money was improper.

### III.

#### CONCLUSION

For the reasons stated, Mr. Finch's Motion to Enforce is **DENIED**. [Filing No. 14.]